REGAN, Judge.
Plaintiff, James H. Smith, a real estate agent who had represented Mr. and Mrs. John C. Blum, instituted this suit against them as defendants, endeavoring to recover the sum of $2,700, representing a commission due him, together with attorney’s fees, all in conformity with the terms of a contract providing therefor. The plaintiff insists that the defendants breached the contract when they refused to comply therewith.
The defendants answered and in addition to generally denying the plaintiff’s allegations, they asserted that no contract existed since Blum did not possess the mental capacity to participate therein.
From a judgment in favor of the plaintiff as prayed for, the defendants have prosecuted this appeal.
The record discloses that on May 15, 1959, the defendants entered into an agreement wherein they listed their property for sale with the plaintiff for a period of sixty days. It was signed by both of the defendants, that is, Mr. and Mrs. Blum.
On June 30, 1959, both defendants signed, as offerors, three copies of a standard printed form generally used by real estate brokers in New Orleans, entitled “Agreement to Purchase or Sell”; this offer upon submission to the prospective purchaser was rejected.
On July 2, 1959, both defendants signed another such agreement wherein the property was offered for a consideration of $45,000, and the terms and conditions of the sale were set forth, which provided, inter alia, for the payment of a six per cent commission,[1] or $2,700, to the real estate agent by the vendor when the contract was accepted, and in case of a breach thereof, it provided for the payment of the commission together with attorney’s fees and costs by the party in default. This contract was accepted by the Robinson Realty Company as vendee.
The purchaser’s notary was in complete readiness to pass the act of sale on September 30, 1959; Nathan Robinson, the president of Robinson Realty Company, the vendee, was present at the scheduled time, prepared to take title, but the defendants failed to appear. Consequently, later the same day the notary placed them in formal default.
The defendants insist they were not obligated to execute the act of sale because the contract to sell which they had signed was invalid since Blum was mentally incompetent, and was thus unable to legally give his consent thereto.
To refute this, the plaintiff testified that he had not known Blum before the inception of the real estate negotiations, but in consequence thereof, he had seen him either seven or eight times. When the plaintiff gave the listing agreement to Blum on May 15, 1959, he explained to him the nature of the contract and the price that he would endeavor to secure for the property. Blum gave every indication of a thorough understanding thereof and accordingly affixed his signature.
The plaintiff further related that during his visits to the Blum residence, Blum had told him about the severe burns he had sustained to the lower part of his body in November of 1958. They also engaged in *421 a general discussion concerning the property and Blum showed him some of the pieces of furniture which he had manufactured over the years.[2] The plaintiff emphasized that “at no time did he give me the impression that that man was of unsound mind, * * * ”, and “I thought he was normal.”
The plaintiff asserted that a few days before the date fixed for the sale, he had received telephone calls from two of the defendants’ daughters, Mrs. Inez Young and Mrs. Lea Gregoire who informed him that the defendants would not execute the act of sale. The family, they said, “thought he (Blum) would be seriously affected mentally if they would go through with the deal.”
Mrs. Blum related that her husband was seventy-one years of age when the contract was signed; he was so ill he was unable to read or to know what was going on around him, and that the family had never considered having him interdicted.
Mrs. Blum conceded that both she and her husband had signed the five documents referred to hereinabove, and that at the time when he signed them she had not objected thereto, although she later contended that he was incompetent to do so. She laboriously endeavored to explain this by saying that the plaintiff negotiated all matters relating to the sale with her, that he had spoken to Blum but once, and that the plaintiff had assured her it was proper for her to sign the contract.
On the trial hereof, Mrs. Blum initially asserted that she had not discussed her husband’s condition with the plaintiff; she later testified that she had done so, and finally, she related that she did not know whether she had informed the plaintiff of her husband’s condition or not.
Mrs. Morrow Gatzman, Mrs. Doris Eise-loh, Mrs. Young and Mrs. Gregoire, daughters of the defendants appeared herein to testify on their behalf. In substance, they asserted that their father had been very ill in July, 1959; that he exhibited symptoms of withdrawal; he was incapable not only of reading, but also of understanding the contract; and that the limited conversation in which he engaged was childish and nonresponsive.
Dr. Morrell W. Miller, an internist, also appeared on behalf of the defendants, and related that he had known Blum since 1935 and had treated him periodically since that time. He stated that Blum had suffered a mild degree of shock for a period of time as a result of his severe burn in 1958 and that “his mentality was very poor.”
Dr. Miller was certain that Blum could not have read or understood the contract when he was in the hospital from November, 1958 to February, 1959, and that this inability to comprehend such a document had developed, in a measure, prior to his burns. He elaborated on this by remarking: “the aging process was right active in Mr. Blum” and he was of the opinion that his condition had worsened since his discharge from the hospital. He therefore doubted that Blum could have understood the terms of the contract confected in July of 1959.
Dr. Kelly Stone, a surgeon, also appeared on behalf of the defendants and related that he first saw Blum in November of 1958 in the hospital and at that time he was in great pain and confused. In the course of Dr. Stone’s weekly visits with Blum following his discharge from the hospital, he noticed that Blum’s conversation was both responsive and nonresponsive. He did concede, however, that he had never recommended medical treatment for Blum’s mental condition.
Predicated upon the foregoing testimony, the trial judge found as a fact that Blum possessed legal capacity to enter into the contract, the validity of which forms the subject matter of this litigation.
*422 The only question posed for our consideration by virtue of this appeal is whether that finding of fact by the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We have carefully reviewed the record and find that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony. Suffice it to say the trial judge correctly concluded that the evidence adduced herein preponderates to the effect that Blum, insofar as the plaintiff was concerned, was competent to contract on July 2, 1959, although his behavior at times was indicative of senility; but that it was not generally known, nor was it sufficiently apparent to the plaintiff, who had not been informed thereof.
Consequently, the defendants have not sustained the burden of proof imposed upon them by virtue of the rationale of Article 1789 of the LSA-Civil Code, which reads:
“A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent!’ (emphasis ours)
From the foregoing provision of the Code, it is obvious that one who attacks the acts of a person of unsound mind, but not interdicted in conformity with the forms set forth in the Civil Code, bears the burden of proving his incapacity, and that this condition was either generally known, or that the person who contracted with him knew it.
In view of what we have said here-inabove, it follows that the real estate agent is entitled to his commission when he procured a bona fide purchaser even though the sale failed to pass, which of course, was due to the fault of the vendors herein.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. The contract provided: “If this offer is accepted, seller agrees to pay the agent’s commission of 6% which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured.
“Either party hereto who fails, for any reason whatsoever, to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agent’s commission and all fees and costs incurred in enforcing collection and damages.”

. Mr. Blum was a furniture manufacturer by trade.