# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 18-10517

————————

United States Court of Appeals
Fifth Circuit

**FILED**
September 20, 2019

Lyle W. Cayce
Clerk

DIANE WEAVER, formerly known as Diane Hickey,

      Plaintiff-Counter Defendant–Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY,

      Defendant-Counter Claimant–Appellee

UNKNOWN PAYEE,

      Defendant–Appellee

METROPOLITAN TOWER LIFE INSURANCE COMPANY, formerly known as Metropolitan Insurance and Annuity Company,

      Counter Claimant–Appellee

v.

JAMES M. PERRY,

      Counter Defendant–Appellee

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

No. 18-10517

Before DAVIS, HIGGINSON, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

This contract-interpretation case under Texas law concerns Diane Weaver's then-husband Larry Hickey, who suffered a diving accident in 1989. The couple received a structured settlement from the premises owner and its insurers. The couple later divorced, and Larry passed away in 2014. The issue is whether the settlement agreements gave Larry the right to replace Weaver as beneficiary of an annuity.

Before deciding the merits, we must decide if the district court had diversity jurisdiction. Weaver initially sued Metropolitan Life Insurance Company and the "Unknown Payee" receiving the annuity payments. Met Life removed the case, then interpleaded James Perry—Larry's brother and the previously unknown payee. Weaver and Perry are both Texans. But, under the diversity and removal statues, the parties were diverse throughout this action. And the district court thus had jurisdiction.

Turning to the merits, summary judgment was correctly granted based on the settlement agreements. These documents, read as a cohesive, contextual, harmonious whole, grant Larry the unilateral right to change the beneficiary. We decline to rewrite the agreements under the guise of interpreting them.

We AFFIRM the judgment.

I

In 1989, Larry suffered a diving accident that left him quadriplegic. Weaver and Larry sued the premises owner for negligence. Larry sought damages for pain, disfigurement, lost income, and medical expenses. Weaver sought damages for loss of consortium, mental pain, and loss of monetary contributions. They obtained a settlement and dismissed the case. Four

No. 18-10517

documents comprise the settlement—the Release, the Settlement Agreement, the Assignment, and the Annuity. Their contents overlap somewhat.

In the Release, Weaver and Larry released their claims in exchange for $850,000. Weaver, Larry, and their attorney were to receive $300,000 immediately, and Met Life was to receive $550,000 from another insurer, Metro Tower, to fund an annuity.

In the Settlement Agreement, Weaver and Larry agreed to dismiss the case in exchange for those payments. The premises owner's insurer, Wausau Lloyds Insurance Companies, agreed to give Larry monthly payments for the longer of either his lifetime or 30 years. The Settlement Agreement addresses beneficiaries and changes:

> If Larry Hickey dies before receiving all payments set forth in this paragraph, such payments shall be made as due to Diane Hickey [Weaver], his wife, if living, otherwise to the Estate of Larry Hickey, upon proof of death being furnished to Wausau Lloyds Insurance Company, or its assignee. Claimant reserves the right to request to change the beneficiary of future periodic payments.

The Settlement Agreement does not define "Claimant." It goes on to provide that Wausau Lloyds would assign its duty to make payments to Metropolitan Insurance and Annuity Company, later renamed Metropolitan Tower Life Insurance Company. Metropolitan Tower would fund the periodic payments by purchasing an annuity contract from Met Life.

In the Assignment, Wausau Lloyds assigned its duty to make payments to Metropolitan Tower. The Assignment identifies Larry as the "Claimant" in its parties list. Its addendum provides who to pay: "Payee: Larry Hickey, if living, otherwise to Diane Hickey, his wife. If Diane Hickey is not living, then payments shall be made to the Estate of Larry Hickey."

In the Annuity, Met Life agreed to make payments. The Annuity provides that the "Measuring Life" is Larry; "Owner" is Metropolitan Tower;

3

No. 18-10517

and "Beneficiary" is "Diane Hickey, wife if living; otherwise the Estate of Larry Hickey." If the Measuring Life died before the 30 years expired, Met Life agreed to make payments to the beneficiary.

In 1999, Weaver and Larry divorced. Among the divorce decree's property distributions, Larry received "[a]ny property not otherwise awarded herein" that was in his possession or sole control.

In 2002, unbeknownst to Weaver, Larry requested to change the annuity's beneficiary from her to his brother Perry. In 2014, Larry died. Weaver, believing she was now entitled to the annuity payments, demanded payment from Wausau Lloyds and Met Life. Met Life responded that it could not direct payments to Weaver because the beneficiary had been changed.

Weaver initially sued Met Life and "Unknown Payee" in Texas state court. She asserted one cause of action: breach of contract against "Defendant." As used in the petition, "Defendant" meant Met Life. In a factual allegation, not a count or claim, she alleged that Unknown Payee was "believed to be a resident of the State of Texas who is currently receiving the periodic payments the subject of this suit." She did not assert a cause of action against Unknown Payee.

Met Life removed the case to federal court. It alleged diversity jurisdiction because Weaver is a citizen of Texas and Met Life is a citizen of New York. It asserted that Unknown Payee was a defendant sued under a fictitious name, who must be disregarded for diversity purposes under 28 U.S.C. § 1441(b)(1). Alternatively, it alleged that diversity jurisdiction existed because Weaver's petition asserted no claims against Unknown Payee.

The day after Met Life removed the case, Met Life and Metropolitan Tower (the Met Life parties) filed an amended answer and counterclaim. The counterclaim was an interpleader action against Weaver and Perry. This

4

No. 18-10517

pleading was both Metropolitan Tower's and Perry's first appearance in the case. It alleged that diversity jurisdiction remained proper because the Met Life parties, citizens of New York and Delaware, were diverse from Weaver and Perry, citizens of Texas.

After learning Perry's identity from the answer and counterclaim, Weaver moved to amend her complaint to assert a claim against Perry for money had and received. She also moved to remand the case to state court because Perry's joinder destroyed diversity. The district court granted leave to amend but denied the motion to remand. It held that diversity jurisdiction over the interpleader action, combined with supplemental jurisdiction over the money-had-and-received claim, made remand unnecessary.

The district court later granted summary judgment to the Met Life parties and Perry. It denied Weaver's motion for summary judgment. Weaver appealed the order denying remand, the summary judgment orders, and the final judgment.

II

The district court held it had jurisdiction based on diversity; Weaver challenges that decision on appeal.

We "review the denial of a motion to remand *de novo*."[1] Similarly, we "review[] *de novo* an order granting summary judgment, 'applying the same standard as the district court.'"[2] Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

---

[1] *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001).

[2] *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017) (quoting *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001)).

[3] FED. R. CIV. P. 56(a).

5

No. 18-10517

III

We view the district court's jurisdiction in three procedural stages. Diversity jurisdiction existed at each stage.

A

Diversity jurisdiction was proper when Met Life removed the case. Under 28 U.S.C. § 1441(a), defendants may generally remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." District courts have original jurisdiction over civil actions between citizens of different states if the amount in controversy exceeds $75,000, which it did here.[4]

And, as Met Life correctly alleged, Unknown Payee could be disregarded for diversity purposes. Title 28 U.S.C. § 1441(b)(1) provides that "[i]n determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded."[5] Although "John Doe" is a more common version, Unknown Payee is the kind of fictitious name this provision covers.[6]

Weaver suggests Met Life acted improperly by removing the case or waiting to identify Unknown Payee. But she relies on cases decided before the 1988 enactment of § 1441(b)(1). That provision abrogated the earlier cases permitting fictitious defendants to defeat removal.[7] In short, this case was

---

[4] *See* 28 U.S.C. § 1332(a).

[5] *See also Vaillancourt v. PNC Bank, Nat'l Ass'n*, 771 F.3d 843, 848 n.38 (5th Cir. 2014) (stating "John and Jane Doe" defendants did not affect removability because fictitious-name defendants shall be disregarded and no claims were asserted against them).

[6] *See, e.g., Griffin v. JPMorgan Chase Bank, N.A.*, No. 2:13–cv–10002, 2013 WL 2237974, at *2 (E.D. Mich. May 21, 2013) ("'Unknown Trustee' and 'Unknown Trust' are precisely the type of 'defendants sued under fictitious names' that are not to be considered in determining diversity jurisdiction under 28 U.S.C. § 1441(b)(1).").

[7] *See, e.g., Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 n.3 (11th Cir. 1989).

No. 18-10517

removable because Met Life was diverse from Weaver; Unknown Payee was a fictitious-name defendant to be disregarded for diversity purposes; and, alternatively, Weaver's state-court petition asserted no claim against Unknown Payee.

B

Diversity jurisdiction continued to be proper when the Met Life parties counterclaimed against Weaver and Perry. Under Federal Rule of Civil Procedure 22(a)(2), "[a] defendant exposed to [double or multiple] liability may seek interpleader through a crossclaim or counterclaim." For Rule 22 interpleader, diversity requires the stakeholder—the party seeking adjudication of multiple claims against it—to be diverse from the claimants.[8] So Perry did not destroy diversity when the Met Life parties named him in their counterclaim. Weaver argues that interpleader was not raised in the notice of removal. But under Rule 22(a)(2), it was a separate claim that could properly be asserted later.

C

And diversity jurisdiction remained proper when Weaver added her money-had-and-received claim against Perry. Initially, it is true that joining a new party can destroy diversity. Under 28 U.S.C. § 1447(e), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and

---

[8] *Travelers Ins. Co. v. First Nat. Bank of Shreveport*, 675 F.2d 633, 637 n.9 (5th Cir. 1982) (stating district court had jurisdiction over Rule 22 interpleader because stakeholder was diverse from all claimants, although claimants were not diverse from each other); *see Eikel v. States Marine Lines, Inc.*, 473 F.2d 959, 964 n.5 (5th Cir. 1973); 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1710 (3d ed. 2019).

In statutory interpleader, the rule is opposite: At least two of the claimants must be diverse from each other. 28 U.S.C. § 1335(a); *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).

No. 18-10517

remand the action to the State court." We explained in the past that "Congress has indicated that federal diversity jurisdiction is defeated so long as, after removal, fictitious defendants are replaced with nondiverse, named defendants."[9]

But Weaver's money-had-and-received claim was not a "joinder" as provided in § 1447(e). It was a new claim against an existing party. The district court correctly treated this as a matter of supplemental jurisdiction. When a district court has jurisdiction over one claim, 28 U.S.C. § 1367(a) authorizes supplemental jurisdiction over other claims so related to it "that they form part of the same case or controversy." It is true that when jurisdiction is based on diversity, the statute excludes certain additional-party claims. Under § 1367(b), there is no supplemental jurisdiction over

> claims by plaintiffs against persons *made parties* under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.[10]

But, reading the pleadings literally, Perry was not "made [a] part[y]" under any of the rules in this exclusion.[11] He was made a party by Met Life under Rule 22.

It is also relevant that district courts generally have supplemental jurisdiction over transactionally-related crossclaims between interpleader

---

[9] *Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 476 (5th Cir. 2001) (quoting *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 674 (1st Cir. 1994)).

[10] (emphasis added).

[11] 28 U.S.C. § 1367(b).

claimants.[12] Weaver's claim against Perry is not styled a crossclaim and may be distinguishable from one in some ways. But its practical similarity to a crossclaim between interpleader claimants is further support for supplemental jurisdiction. Both a literal reading of the 28 U.S.C. § 1367(b) exclusion and a practical view of Weaver's claim against Perry show that supplemental jurisdiction was proper.

Met Life threaded the procedural needle to establish diversity in this case. But diversity jurisdiction was proper for other reasons too. The court has a duty to realign the parties based on their sides in the dispute. In *City of Indianapolis v. Chase National Bank*, the Supreme Court held that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is [the court's] duty . . . to look beyond the pleadings, and arrange the parties according to their sides in the dispute."[13] We have elaborated that "[t]he objective of *City of Indianapolis* realignment is only to insure that there is a *bona fide* dispute between citizens of different states."[14] For diversity jurisdiction to be proper in this case, the real dispute must be Weaver and Perry against the Met Life parties.

It is fair to say that's the case. The reason that diversity in Rule 22 interpleader cases is measured between the stakeholder and the claimants is that the stakeholder has its own interest in the case—to be relieved of double

---

[12] *See Travelers*, 675 F.2d at 638 (stating that "ancillary" jurisdiction includes crossclaims arising from the same transaction or occurrence as the interpleader claim); 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1715 (3d ed. 2019).

[13] 314 U.S. 63, 69 (1941) (internal quotation marks omitted).

[14] *Zurn Indus., Inc. v. Acton Const. Co.*, 847 F.2d 234, 237 (5th Cir. 1988).

or multiple liability.[15] That is the Met Life parties' position here. It may seem odd that the interpleader counterclaim effectively pivoted the diversity analysis. But the counterclaim was proper as a formal matter, and it served at least some substantive interest.[16]

Our decision *Eikel v. States Marine Lines, Inc.* confirms the same principle in a non-interpleader context.[17] It was a fee dispute between a Delaware- and Connecticut-citizen client and its Texan former lawyers.[18] The court joined another Texan lawyer, who had a competing claim against the client, as an indispensable party.[19] Despite his adversity to the other Texans, diversity jurisdiction remained proper.[20] This was because the "crux" of the suit was to recover payment from the client—even though the client had admitted liability.[21] The court said in dicta that a Rule 22 interpleader counterclaim by the client—exactly Met Life's course of action here—would have simplified the case and preserved diversity.[22]

Existing law is relatively uniform that, in Rule 22 interpleader, a stakeholder diverse from the claimants supports diversity jurisdiction.[23] And the interests here are not sufficient to put aside form and realign the parties as they were arranged in Weaver's original suit.[24]

---

[15] *See Stewart Oil Co. v. Sohio Petroleum Co.*, 315 F.2d 759, 761–62 (7th Cir. 1963); 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1710 (3d ed. 2019).

[16] *See Stewart*, 315 F.2d at 761–62.

[17] 473 F.2d at 960–61.

[18] *Id.*

[19] *Id.* at 961.

[20] *Id.* at 964.

[21] *Id.* at 964–66.

[22] *Id.*

[23] *See Travelers*, 675 F.2d at 637 n.9; 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1710 (3d ed. 2019).

[24] *Cf. Zurn*, 847 F.2d at 237 (declining to realign parties where there was a bona fide dispute between diverse parties).

No. 18-10517

IV

Since the district court had jurisdiction, we next review Weaver's merits argument that summary judgment should not have been granted. "As this is a diversity case, [the court] interpret[s] the contract at issue under Texas law."[25] "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."[26] "[C]ourts should examine and consider the *entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless."[27]

The first issue is whether Larry had a contractual right to change the beneficiary. The law begins with language. And whether the language is contractual, as here, or statutory, we give words their ordinary, natural meaning. "Text is the alpha and the omega of the interpretive process."[28] And when decoding language, judges "must be attentive not to words standing alone but to surrounding structure and other contextual cues that illuminate meaning."[29] Here, we decline to engraft what the parties declined to enact.

The Settlement Agreement provides that "Claimant reserves the right to request to change the beneficiary of future periodic payments." After such a request, the right to accept or reject the change belongs to Metropolitan Tower. The question is whether "Claimant" means Larry alone or both Weaver and Larry.

The Claimant was Larry alone because the Settlement Agreement granted periodic payments to him alone. Under that agreement, the initial

---

[25] *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (per curiam).

[26] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[27] *Id.*

[28] *United States v. Maturino,* 887 F.3d 716, 723 (5th Cir. 2018).

[29] *Reed v. Taylor,* 923 F.3d 411, 415 & n.16 (5th Cir. 2019).

11

lump sum payment was for Weaver, Larry, and their attorney: "$300[],000.00 Cash payment to Larry Hickey, Diane Hickey and Edward McAninch . . . ." But the periodic payments from the remaining $550,000 were for Larry alone while he lived: "Periodic Payments 1. Wausau Lloyds Insurance Company hereby agrees to make the following monthly payments to Larry Hickey . . . ." This description of the periodic payments heads the same paragraph that ends with "Claimant reserves the right to request to change the beneficiary of future periodic payments." It suggests Larry is the Claimant. Finally, the Settlement Agreement links the term "Claimant" to the periodic payments' sole recipient again two pages later. "The periodic payments to be received by Claimant pursuant to Periodic Payments . . . are not subject in any manner to [forms of assignment]." These provisions support the Claimant being Larry and not Weaver and Larry together.

And the Assignment explicitly defines "Claimant" to be Larry. Granted, the Assignment is a separate instrument from the Settlement Agreement (which contains the beneficiary-change provision). But the Assignment is part of the same settlement and central to Weaver's contract theory here.[30]

Weaver generally contends that she shared in the right to the periodic payments. In the Settlement Agreement she gave consideration separate from Larry because she released her own claims for mental pain and loss of consortium. But the Settlement Agreement's most natural reading is that she received the lump sum in return for those, and Larry received the periodic payments in return for his personal-injury claims.

---

[30] *Cf. Coker*, 650 S.W.2d at 394 ("Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered.").

No. 18-10517

Our plain-language reading honors Texas courts' text-centric approach. The Supreme Court of Texas has observed that the interpretive role of judges "is to be neither generous nor parsimonious"[31] but unswervingly faithful to what the words actually say. Looser atextual readings may scratch an equitable itch, or at times seem more pragmatic. But the Texas High Court adheres to this centuries-old principle—"law, without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce the most infinite confusion."[32] Texas precedent is no-nonsense about giving words their most forthright, contextual meaning. Plain language forbids judicial ad-libbing. Here, the text is clear. And, at least in Texas, clear text = controlling text.[33]

Weaver also lacks a right to sue. Her operative complaint alleges breach of the Settlement Agreement, but Met Life and Metropolitan Tower are not parties to the Settlement Agreement. Weaver alternatively contends she is a third-party beneficiary of the Assignment and the Annuity. But Texas contract law from life insurance cases undermines this. "When an insured retains the right to change the beneficiary in a life insurance policy, a beneficiary ordinarily acquires no vested rights, by virtue of designation, in either the policy or its proceeds until the insured's death . . . ."[34] That is, a revocable life-insurance beneficiary has no vested contract right unless she is the designated beneficiary when the insured dies.[35] By the same principle, an annuity

---

[31] *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 85 (Tex. 2017).

[32] *Id.* at 86 (citing 1 William Blackstone, *Commentaries* 62 (4th ed. 1770)).

[33] *Id.* at 84.

[34] *Fid. Union Life Ins. Co. v. Methven*, 346 S.W.2d 797, 799 (Tex. 1961).

[35] *See id.*

beneficiary has no vested contract right if she is properly removed before the principal claimant dies.[36]

Larry requested a beneficiary change before Weaver had any vested right in the periodic payments. So Weaver has no rights under the Assignment or Annuity, which are the only agreements that bind the Met Life parties. This frustrates Weaver's breach of contract claim. It also means Weaver cannot object to Met Life's or Metropolitan Tower's procedures for implementing Larry's change request.[37]

Weaver cannot recover from Perry either. The money-had-and-received claim is based on Weaver's right to receive the annuity payments after Larry's death. Since Weaver had no such contractual right, she is not entitled to recover from Perry.[38] Weaver's declaratory judgment claim, based on the same contracts, also lacks merit.

V

We AFFIRM the judgment.

---

[36] *Cf. Royal Indem. Co. v. Bates*, 314 F. App'x 732, 733 (5th Cir. 2009) (holding that annuity payments vested only as they came due).

[37] *See Methven*, 346 S.W.2d at 800 (holding plaintiff had no right to insist that change of beneficiary be endorsed on policy paper itself).

[38] *See Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951) (holding that money-had-and-received claim asks "to which party does the money, in equity, justice, and law, belong").