Lowe Foundation, Appellant, v. Northern Trust Company, Executor of Last Will and Testament of Thomas B. Lehon, Deceased et al., Appellees.

Gen. No. 45,235.

 Opinion filed January 29, 1951. Released for publication March 2, 1951.

VENT & VENT, of Chicago, for appellant.

WINSTON, STRAWN, SHAW & BLACK, of Chicago, for appellees; JAMES H. CARTWRIGHT, of Chicago, of counsel.

MR. PRESIDING JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff appeals from an order striking its complaint and dismissing its suit to contest the probate of a codicil to the will of Thomas B. Lehon, hereafter called decedent, and to redress in equity and at law the injury caused by the alleged wrongful interference with and prevention of the execution of another codicil by decedent, bequeathing $500,000 to plaintiff.

The complaint alleges in substance that plaintiff, a corporation not for pecuniary profit, maintains and operates certain premises in Du Page county, Illinois as a permanent Home for Christian Scientists and to provide facilities for quiet, restful study, and a suitable environment and proper care for those seeking healing through Christian Science; that decedent, a successful manufacturer, was an earnest student of Christian Science for many years, a member of the First Church in Chicago and the Mother Church in Boston, and became a guest (or resident) of plaintiff on June 8, 1948, being introduced to the Home (hereafter called the Foundation) by Joseph N. Troutman who had him brought to the Foundation from a convalescent home in Milwaukee, Wisconsin; that decedent remained at the Foundation in the care of a special nurse until August 31, 1948; during this time it became his desire to perpetuate the work of plaintiff in the form of a building to be erected as a memorial to his life

work; that on August 30, 1948, decedent, being short of breath and alarmed over his condition, requested that the attorney for plaintiff, and Edward A. Leonard, president of The Lehon Company with which decedent was associated, be sent for; that decedent then wrote and signed a holographic will or codicil bequeathing $500,000 to plaintiff, a photostatic copy of which is attached to the complaint; that after talking with Leonard, defendant Glover, the attorney who had drawn a prior will and codicil for decedent, accompanied Vent, attorney for plaintiff, to the Foundation, where a codicil prepared by Vent was read to decedent and signed by him in the presence of Glover, Vent and others, but without filling in the amount; that when decedent's attention was called to this omission, Glover stated to him that $500,000 would exhaust his entire estate and that he had better not complete the codicil until he had talked with Froderman, an adviser and trustee under decedent's will; that the amount remained blank and the incompleted typewritten codicil which decedent had just signed was openly destroyed by Vent in the presence of decedent and the persons before whom he had signed it; that the following afternoon, August 31, 1948, Froderman, and Donald Baikie, another testamentary trustee, and Troutman, advised decedent that they had come to take him from the Foundation, Troutman assuring him that he would be adequately taken care of at his apartment; that decedent was then ''summarily'' removed to his apartment at the Bryson Hotel in Chicago, where, plaintiff charges on information and belief, he was held under close supervision by the persons who removed him from the Foundation, was ill in bed and in a state of utter exhaustion and was isolated from contact with any but the circle of purposeful persons who were chosen to surround and contact him, including Glover, decedent's stepdaughter Mrs. Welti, his nephew William Quinlan,

and Froderman and Baikie; that while so held he was induced to and did sign an alleged codicil to his will dated September 3, 1948, purporting to cancel and annul all previous codicils to his will except the codicil dated October 16, 1947; that this codicil represented the will of the draftsman, Glover, or those persons for whom he acted, and not the will of decedent; that other documents, including conveyances of real and personal property, assignments, and one or more powers of attorney, were at or about that time prepared, presented to and caused to be signed by decedent, the exact nature of which are unknown to plaintiff, under which assets owned by the decedent aggregating upwards of $1,000,000 were disposed of, or had previously been disposed of, and thereby ratified by decedent without his understanding or then being capable of understanding the exact nature of any of the documents signed by him; that the execution of said documents by decedent was the result of improper conduct and undue influence in the procurement thereof; that decedent died September 8, 1948, leaving as his nearest surviving relatives two nephews and four nieces, defendants herein; that his will, dated September 6, 1946, and codicils thereto dated October 16, 1947 and September 3, 1948 (copies of which are made a part of the complaint), were admitted to probate in the probate court of Cook county, Illinois October 28, 1948, and probate of the above-mentioned holographic will or codicil of August 30, 1948, was denied; that plaintiff appealed from the orders of October 28, 1948, admitting said will and codicils to probate and refusing probate of the said holographic will or codicil; that this appeal, filed in the circuit court of Cook county, was set for hearing on April 12, 1949, at which time, on motion of attorneys for plaintiff, the appeal was dismissed without prejudice and without costs; that the Northern Trust Company of Chicago, executor of the

will, has not filed an inventory in the estate, but in its petition for probate of the will estimated the value of the whole estate at not more than $400,000; and plaintiff alleges on information and belief that the said executor was misinformed as to the value of decedent's estate in Illinois subject to probate, and that if the above-mentioned transactions occurring after decedent's said removal from the premises of plaintiff are annulled by decree of the court and his interest in The Lehon Company is accurately set forth, and at its fair value, the estate of decedent subject to probate in the probate court of Cook county would aggregate approximately $3,000,000.

The complaint asks that the said codicil of September 3, 1948, and its probate be set aside and declared null and void; that the holographic codicil dated August 30, 1948, be decreed to be a true and valid codicil and be ordered admitted to probate; that the recipients of the above-mentioned transfers of assets belonging to decedent be declared to be trustees *ex maleficio* for plaintiff, and the said recipients be ordered to pay over to said executor the proceeds of the wrongful transfers; that the executor be ordered to list the fair valuation of the stock of The Lehon Company, and thereafter to hold out of the proceeds of said estate a sum sufficient to carry out in full the provisions of the holographic codicil; that plaintiff may have discovery and an accounting from the defendants of the several matters and things set forth on information and belief; that, in the alternative, judgment be entered against certain of the defendants and in favor of plaintiff in the sum of $500,000 for wrongful interference with decedent's intended testamentary disposition in favor of plaintiff; that plaintiff may have such other and further equitable relief as shall seem meet.

In determining the sufficiency of the complaint it must be considered as a complaint to contest the

probate of the codicil of September 3, 1948, to establish a constructive trust, and, in the alternative, as a complaint in an action of tort.

The right to contest a will or codicil is statutory and can be maintained only by an interested person after the will or codicil has been admitted to probate. Section 90 of the Probate Act [Ill. Rev. Stat. 1949, ch. 3, par. 242; Jones Ill. Stats. Ann. 110.339]; *Simpson v. Simpson,* 273 Ill. 90. The remedy of a person aggrieved by denial of probate of an instrument offered is by appeal to the circuit court. Section 330, Probate Act [Ill. Rev. Stat. 1949, ch. 3, par. 484; Jones Ill. Stats. Ann. 110.581]. Plaintiff appealed to the circuit court of Cook county from the order denying probate of the alleged holographic codicil. Before hearing it procured dismissal of the appeal without prejudice and thereby left the order of the probate court in full force and effect the same as if no appeal had been taken. *People ex rel. Waite v. Bristow,* 391 Ill. 101, 112. It could not thereafter invoke the aid of a court of equity to vacate the order or procure the probate of the alleged codicil. *Wild v. Sweeney,* 84 Ill. 213. Without probate the alleged codicil created no right, title or interest in or to the estate of decedent. Plaintiff has no other claim and is not an interested person entitled to contest the probate of the codicil of September 3, 1948.

Whatever rights plaintiff has must grow out of the alleged wrongful interference with and prevention of the execution of the formal codicil prepared by Vent August 30, 1948. The right of an intended devisee or legatee to relief for such wrongful conduct has never been passed on in Illinois. Where relief has been granted in other jurisdictions it has been by the declaration of a constructive trust in property received from the estate by the heir, devisee or legatee guilty of the unlawful interference, or by damages in an action

385

in tort. The rule as to equitable relief is stated in *Ransdel v. Moore*, 153 Ind. 393, as follows:

" . . . when an heir or devisee in a will prevents the testator from providing for one for whom he would have provided but for the interference of the heir or devisee, such heir or devisee will be deemed a trustee, by operation of law, of the property, real or personal, received by him from the testator's estate, to the amount or extent that the defrauded party would have received had not the intention of the deceased been interfered with."

The interference must amount to fraud, duress or undue influence. Restatement of the Law of Restitution, sec. 184, comment i. *Latham v. Father Devine*, 299 N. Y. 22. In *Ashton v. Macqueen*, 361 Ill. 132, 143, the court said:

"A trust *ex maleficio* arises out of positive fraud and misconduct, only. There must be some element of intentional misconduct on the part of the alleged trustee. (*Ryder v. Ryder*, 244 Ill. 297; 3 Pomeroy's Eq. Jur. sec. 1044.)"

We find no case in which the rule of constructive trust has been extended to property received by an heir, devisee or legatee where intended testamentary disposition of property has been prevented by the fraud or unlawful interference of a third person.

In respect to the intended beneficiary's right to damages in a tort action the authorities are in conflict. Scott on Trusts, Vol. 3, sec. 489.4, page 2371. In *Hutchins v. Hutchins*, 7 Hill (N. Y.) 104 (1845), a right of action was denied on the ground that "plaintiff had no interest in the property of which he says he has been deprived by the fraudulent interference of the defendant, beyond a mere naked possibility; an in-

terest . . . which is altogether too shadowy and evanescent to be dealt with by courts of law." To the same effect is *Cunningham v. Edward,* 52 Ohio App. 61, 3 N. E. 2d 58 (1936), where the court held that tort would lie only for the invasion of legal rights. In *Lewis v. Corbin,* 195 Mass. 520 (1907), a right to sue in tort was recognized but the pleading held defective on demurrer "in not averring facts which exclude the possibility that the testatrix changed her purpose in regard to this legacy, and which show that the fraud continued operative to the time of her death, and thus caused the loss to the plaintiff." The right to maintain an action in tort was upheld in *Bohannon v. Wachovia Bank & Trust Co.,* 210 N. C. 679 (1936), where the court held that the rule which gives a right of action for the malicious and wrongful interference with the making of a contract applied to such interference with the making of a will. See also *Mitchell v. Langley,* 143 Ga. 827; Restatement of the Law of Torts, sec. 870, illustration 3.

The only allegation of interference with the intended testamentary disposition of property by decedent is the charge that on August 30, 1948, after decedent had signed the formal codicil and was about to insert the amount of the legacy to plaintiff, the defendant Glover interposed the statement to decedent that "$500,000 would exhaust his entire estate and that he had better not complete the codicil until he talked with Mr. Froderman, one of his advisers and a testamentary trustee." The codicil was not completed. It was destroyed by Vent in the presence of decedent and the persons before whom he had signed it. The next day the decedent was removed to his apartment in Chicago over the protest of the head nurse of the Foundation. There is no allegation that decedent opposed his removal after Troutman, who had caused him to be

brought to the Foundation, "assured him that he would be adequately taken care of at his apartment."·

██ Plaintiff contends that the statement that "$500,000 would exhaust his entire estate," is false. The essentials of actionable fraud based on misrepresentation are, representation, falsity, *scienter,* deception and injury. *Bouxsein v. First Nat. Bank,* 292 Ill. 500. The extent of Glover's knowledge of decedent's financial affairs is not shown. He had drawn decedent's will, dated September 6, 1946, and the codicil of October 16, 1947. By his will decedent made bequests of less than $25,000 in cash and devised the residue of his property to Froderman and Baikie, as trustees, primarily for the benefit of his nieces and nephews, with a provision that if the trust estate should exceed in value $150,000, the trustees should pay $30,000 of such excess to two named legatees. This provision of the will indicates an estate of considerably less than $500,000 two years before the death of decedent. There is no allegation that Glover knew his statement was false; neither is any fact or circumstance alleged from which such knowledge can be inferred. Furthermore, if decedent possessed testamentary capacity on August 30, 1948, he knew the nature and extent of his property and could not have been misled by Glover's statement. There is no allegation that he was deceived by it. The fact that the codicil was not completed does not raise an inference that decedent acted upon the statement, because coupled with it was the very reasonable and proper suggestion that decedent talk with Froderman, his adviser and testamentary trustee, before making the bequest. Glover, substituting for Leonard, for whom decedent had sent, was not an intermeddler but a chosen adviser whose duty it was to warn decedent against making an ill-advised and disproportionate disposition of his estate. He is not an heir, devisee or

388

legatee, who might profit by preserving the *status quo*. He is not charged with having acted in collusion with or for the benefit of any heir, devisee or legatee in advising against the immediate completion of the codicil. There is nothing in the complaint to overcome the presumption that he acted honestly.

██ Defendants' objection to the insufficiency of the complaint in other respects need not be considered. The complaint does not state a cause of action warranting a declaration of a constructive trust or awarding damages in tort. Plaintiff is not entitled to contest the probate of the codicil of September 3, 1948.

The order striking the complaint and dismissing the suit is affirmed.

*Order affirmed.*

TUOHY and FEINBERG, JJ., concur.