Nicolae DRAGAN, et al.,
Plaintiffs-Appellants,

v.

John and Sylvia MILLER,
Defendants-Appellees.

No. 81–1903.

United States Court of Appeals,
Seventh Circuit.

Submitted April 20, 1982.

Decided June 4, 1982.

John R. Vintilla, Cleveland, Ohio, for plaintiffs-appellants.

Luke R. Morin, Dixon, Ill., for defendants-appellees.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The complaint in this diversity case, filed in September 1980, alleges that the plaintiffs are residents of Rumania and the nieces and nephews—and heirs by intestacy—of Walter Dragan; that Dragan died in Illinois in June 1979 at the age of 87, leaving a will that bequeathed his entire property to the defendants; and that the defendants, who are not related to Dragan, had improperly influenced him when he was "ill and enfeebled" to will his property away from the plaintiffs. The complaint asks that the defendants be declared constructive trustees of Dragan's estate for the plaintiffs' benefit. The district court dismissed the complaint on the ground that it was within the probate exception to federal diversity jurisdiction.

The probate exception is one of the most mysterious and esoteric branches of the law of federal jurisdiction. The usual account given of it is historical. The Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78, conferred on the federal courts, in diversity cases, concurrent jurisdiction over "all suits of a civil nature at common law or in equity." The counterpart language in the current grant of diversity jurisdiction to the federal courts, "all civil actions," 28 U.S.C. § 1332(a), may seem broader, but it was intended to be synonymous with the language quoted above from the Judiciary Act of 1789. See Reviser's Note to 28 U.S.C. § 1332 (1976). Now "suits of a civil nature at common law or in equity" meant in eighteenth-century England suits brought in either the common law courts or the chancery court; and it is argued that since the probate of wills and the administration of intestate estates were within the exclusive jurisdiction of the ecclesiastical court, they were not included in the Judiciary Act's grant of jurisdiction to the federal courts. See, e.g., *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). One does not have to be an expert historian to spot the flaws in this reasoning. First, there was no ecclesiastical court in America, and it is not obvious why the language of the Judiciary Act of 1789 should be taken to refer exclusively to English rather than American courts. Someone should investigate the jurisdiction of American equity courts in the eighteenth century relative to that of any specialized probate courts that might have corresponded to the ecclesiastical court in England; no one has. Second, the scope of the exclusive jurisdiction of the ecclesiastical court is very uncertain. In particular, it appears not to have extended beyond personal property; apparently the court of chancery had extensive jurisdiction over the inheritance of land. See, e.g., *Barnesly v. Powel*, 1 Ves.Sen. 284, 286–87, 27 Eng.Rep. 1034, 1036 (Ch. 1749). The complaint in this case alleges that Dragan's estate included a valuable piece of land.

But however shoddy the historical underpinnings of the probate exception, it is too well established a feature of our federal system to be lightly discarded, and by an inferior court at that, even if we were to reject as artificial the proposition that Congress's failure to repeal the exception when reenacting from time to time the grant of diversity jurisdiction to the federal courts indicates congressional acquiescence. So we accept, as settled law that we have no wish to disturb no matter how dubious its historical pedigree, the statement of the Supreme Court in the *Markham* case that "a federal court has no jurisdiction to probate a will or administer an estate ...." 326 U.S. at 494, 66 S.Ct. at 298. But this is not what the court below was asked to do. Dragan's will was admitted to probate in an Illinois court; the court directed the distribution of his estate in accordance with the terms of the will; the estate was distributed to the people who are the defendants in this action; and with that the probate proceeding ended. The plaintiffs do not want to enjoin or reopen that probate proceeding or reach property in the hands of the state court. There is no such property. The defendants have it, and the plaintiffs want to get it out of their hands. So not only does this lawsuit not ask the federal court to probate a will or administer an estate, but it does not seek to "interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court."

*Markham, supra,* 326 U.S. at 494, 66 S.Ct. at 298. In *Markham,* the Alien Property Custodian had succeeded to the interests of German nationals to whom the decedent had willed his property, but a state court had disregarded the will and given the decedent's property to his heirs on the basis of a California statute that forbade the devise of property to certain aliens. The Alien Property Custodian brought suit against the heirs to recover the decedent's property on the ground that the will was valid notwithstanding the California statute. The Supreme Court held that the federal district court had jurisdiction over the suit. Superficially, at least, the present case is similar.

But before we conclude that *Markham* controls we ought to consider the purposes that the probate exception to federal diversity jurisdiction might be thought to serve. Even if the framers of the Judiciary Act of 1789 intended to deny to the federal courts jurisdiction over the sorts of cases that in England were heard in the ecclesiastical court, they presumably had some reason for doing this besides the name of the court. And the exception probably would not have persisted as long as it has without a better reason than that it may have been implicit in the first judiciary act or that the framers of Article III of the Constitution may have intended to limit the jurisdiction of the federal courts to the types of cases adjudicated in the English common law and chancery courts. Rigidly historicist interpretations of the Constitution have not been much in vogue for generations.

Several practical reasons for the probate exception, of varying weight, occur to us. One is the promotion of legal certainty. If an issue may end up being litigated in either a state or a federal court, its resolution is less certain, less predictable, than if it can be litigated in one or the other forum only, even if the same substantive law is applied. Certainty is desirable in every area of the law but has been thought especially so with regard to the transfer of property at death. See, e.g., Restatement (Second) of Conflict of Laws, § 11, comment *c* (1971). There are obstacles enough to effectuating testamentary intentions; legal uncertainty ought not to be one of them. This is an argument for exclusive state jurisdiction, since the federal courts cannot exercise jurisdiction in relation to decedents' estates except in diversity cases. But it does not strike us as a very powerful argument. If there is diversity of citizenship among the claimants to an estate, the possible bias that a state court might have in favor of citizens of its own state might frustrate the decedent's intentions; it is just such bias, of course, that the diversity jurisdiction of the federal courts was intended to counteract. It is worth noting that the plaintiffs in this case are nonresidents, and the defendants residents, of Illinois, in whose courts this case would have been tried had the plaintiffs not invoked federal jurisdiction.

█ A more compelling reason for the probate exception is judicial economy. When a person dies, his will has to be admitted to probate somewhere, or if he dies intestate the control of his property has to be vested in some court initially, and it is hard to imagine in either case how the initial jurisdiction over the decedent's estate could be elsewhere than in a state court. Only as the probate proceeding unfolds will the prerequisites of diversity jurisdiction—the diverse citizenship of the contestants and the minimum required amount in controversy—appear. If the probate proceeding thus must begin in state court, the interest in judicial economy argues for keeping it there until it is concluded. (A similar argument could of course be made against removal of cases from state to federal court other than immediately after the state-court action began, but the argument has been rejected by Congress. See 28 U.S.C. § 1446(b).) But this begs the question, when is the probate proceeding concluded? The practical answer, which we elaborate below, is, when there is no longer any substantial judicial diseconomy from conducting further litigation relating to the decedent's estate in a different court from the one where the will was admitted to probate or the intestate estate administered.

If for the above reasons, especially the second (judicial economy), the state courts are going to have a measure of exclusive jurisdiction in probate matters, federal

courts will not have much experience in adjudicating certain issues—those characteristic of though not necessarily limited to probate proceedings, in particular issues of testamentary capacity. If so, there is an argument—call it the argument from relative expertness—for confining the adjudication of probate-type issues to state court even when they arise in proceedings that otherwise might not be clearly classifiable as probate proceedings. But this argument like the first seems something of a makeweight. With the explosion in recent years of "will substitutes" such as life insurance and joint savings accounts, the federal courts in diversity cases presumably have acquired at least modest experience with issues of testamentary capacity of the kind that arise in probate cases.

Although the foregoing considerations are general in nature, they do not compel the conclusion that federal jurisdiction in relation to decedents' estates should have the identical scope in every state. The force of the considerations will vary from state to state depending on particular judgments made by each state and incorporated in its probate laws. If a state creates a specialized cadre of judges to administer its probate jurisdiction, this will be a reason for interpreting the probate exception to the federal diversity jurisdiction broadly in that state; the argument from relative expertness will have greater force in such a state than in one where authority in probate matters is exercised by courts of general jurisdiction. Or if a state has decided that a certain issue may be raised only in the original probate proceeding, this will strengthen the argument from judicial economy by indicating that the state believes that bifurcated consideration of probate-related issues would produce judicial diseconomy. Hence our judgment in the present case may depend to a significant extent on how Illinois has decided to configure its probate jurisdiction.

The practical approach we propose to take in this case is in accord with leading precedents, notably *O'Callaghan v. O'Brien*, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101 (1905), a case that, as we shall see, bears a strong factual resemblance to the present case. After noting that "matters of pure probate, in the strict sense of the words, are not within the jurisdiction of courts of the United States," the Supreme Court went on to hold that even if a state allowed suits in law or equity to set aside a will, the federal courts could not entertain such a suit "when the remedy to set aside afforded by the state law is a mere continuation of the probate proceeding; that is to say, merely a method of procedure ancillary to the original probate, allowed by the state law for the purpose of giving to the probate its ultimate and final effect." *Id.* at 110, 25 S.Ct. at 734. The concept of "ancillarity," in this as in other areas of the law, see, e.g., Bork, The Antitrust Paradox: A Policy at War with Itself 26–30 (1978) (discussing the concept of "ancillary" restraints of trade), is an invitation to apply a concept—here the concept of probate—pragmatically.

The suit by the plaintiffs in this case is not a pure matter of probate. Historically in Illinois a probate court did not have jurisdiction to set aside a will on the ground of undue influence, which is what the plaintiffs are in effect asking here; a person who wanted to challenge a will on that ground had to bring a separate action in a court of general jurisdiction. See, e.g., *Shepherd v. Yokum*, 323 Ill. 328, 334–35, 154 N.E. 156, 159 (1926); *Berndtson v. Heuberger*, 21 Ill.2d 557, 562–63, 173 N.E.2d 460, 463 (1961). Although Illinois has now abolished separate probate courts, as we had occasion to note just the other day in *Hamilton v. Nielsen*, 678 F.2d 709, 710 (7th Cir. 1982), the scope of the probate jurisdiction remains unchanged, see *Ruffing v. Glissendorf*, 41 Ill.2d 412, 416–17, 243 N.E.2d 236, 238–39 (1969), much as the merger of law and equity left unchanged the scope of equity jurisdiction for such purposes as deciding whether a party has a right to a jury trial.

We must therefore consider whether this suit is "ancillary" to probate in the practical sense that allowing it to be maintained in federal court would impair the policies served by the probate exception to federal

diversity jurisdiction. With respect to legal certainty, it is significant that what the plaintiffs want is a declaration that Dragan's will was invalid and that his estate should pass to them under the Illinois intestacy statute; this is not the form of the action but would be its practical effect if it succeeded. If such a suit can be maintained in federal court, testators whose heirs or legatees can satisfy the diverse-citizenship and amount-in-controversy requirements of federal diversity jurisdiction will not know whether the validity of their wills will be decided by a state or by a federal court. This was true to some extent in *Markham* as well, but the only issue regarding the validity of the will in that case was a pure question of law relating to the California statute; and it can be argued that there is a greater probability that this issue would be decided the same way whether by a state court or by a federal court than that a federal court would decide a factual question, such as whether there was undue influence over a testator, the same way that a state court, with its different procedures, would decide it. But we do not place much weight on this factor. As mentioned earlier, against it must be set the fact that the plaintiffs are nonresidents suing residents: the possibility of state-court bias, the conventional though perhaps archaic foundation of the diversity jurisdiction, cannot be entirely excluded.

The interest in judicial economy, however, argues very strongly for confining this lawsuit to state court. The Illinois Probate Act of 1975, Ill.Rev.Stat., ch. 110½, § 8–1, establishes a procedure for will contests that is the exclusive procedure by which a will contest can be litigated in an Illinois court. See, e.g., *Blyman v. Shelby Loan & Trust Co.*, 382 Ill. 415, 421, 47 N.E.2d 706, 709 (1973). A will contest is initiated by filing a petition within six months of the admission to probate of the will to be contested. The petition must be filed in the proceeding to probate the will and the effect of the filing is to extend the probate proceeding until the will contest is completed. See *Estate of Lynch*, 103 Ill. App.3d 506, 507–09, 59 Ill.Dec. 233, 235–236,

431 N.E.2d 734, 736–37 (1982). Behind this procedure lies, it would seem, a judgment that all issues relating to the validity of a will ought to be decided as part of the initial probate proceeding, before the same judge, and before his recollection of the will has faded. If the plaintiffs in this case are free to contest the will in a different court, that will undermine what is not merely a hypothetical interest in judicial economy but almost certainly the interest that actually moved the Illinois legislature to give its will-contest procedure the form it did and to make that procedure exclusive. When the Supreme Court in *O'Callaghan* held that will-contest actions under Washington state law were ancillary to probate proceedings and so could not be brought in federal court under the diversity jurisdiction, one of the factors it relied on was that under state law such an action could be brought only in the court where the will had been admitted to probate. See 199 U.S. at 114, 25 S.Ct. at 735; see also *Sutton v. English*, 246 U.S. 199, 207–08, 38 S.Ct. 254, 257, 62 L.Ed. 664 (1918).

Finally, the issue that the plaintiffs are asking the federal court to decide in this case—the issue of undue influence over the testator—is one that state judges have greater experience with than federal judges. From this standpoint whether the issue is litigated in a "pure" probate proceeding or, as in Illinois, in an ancillary proceeding is immaterial. Therefore, if there is some residual uncertainty that this case would be functionally a probate proceeding if brought in state court under section 8–1 of the Illinois Probate Act, the nature of the substantive issue in the case should dispel it.

We would have no doubt that this suit was within the probate exception to the diversity jurisdiction were it not for the labels that the plaintiffs have attached to their complaint. Instead of just claiming that the will is invalid and therefore the estate should pass to them, the heirs, by intestacy—a claim that could be litigated only in a will contest under section 8–1— they claim that the defendants have com-

mitted a tort against them by using undue influence to procure the will that was admitted to probate and as a result have deprived them of the inheritance they would have had if Dragan had died intestate. If we are correct in using a practical approach to defining the scope of the probate exception, labels would not alter our result. Whatever the plaintiffs call their action it is in effect one to declare Dragan's will invalid because of undue influence and to have his property pass to them under the Illinois intestacy statute; and while such an action cannot interfere with the Illinois probate proceeding now that it has ended, if it were brought in federal court it would frustrate the objectives that we have said lie behind the probate exception and that, we surmise, explain its remarkable persistence.

But if Illinois allows the labels that a plaintiff puts on his suit to determine whether it must be brought under section 8–1, then the case for exclusive state jurisdiction is weakened. The argument from judicial economy would collapse because if the state allows an action challenging the validity of a will to be brought as a separate tort action before a different judge from the one who probated the will, it is hard to see why that different judge may not be a federal judge if the prerequisites of diversity jurisdiction are satisfied. The arguments from legal certainty and relative expertness would survive, but in an attenuated form, and they are not powerful arguments to begin with. True, with Illinois having abolished separate probate courts, a state tort action would at least be brought before the same kind of judge who had admitted the will to probate, though not necessarily the same individual; on the other hand, that abolition also reduces any argument for greater expertness based on specialization.

But we do not have to decide whether in these circumstances the probate exception would still be applicable. Like most states, Illinois recognizes a tort of wrongful interference with an expectancy in a decedent's estate; but where, as in this case, the interference consists of having procured a will that disinherits the plaintiff, it appears that the tort action must be brought as an ancillary proceeding, under section 8–1 of the Illinois Probate Act, to the original proceeding. *Lowe Foundation v. Northern Trust Co.*, 342 Ill.App. 379, 96 N.E.2d 831 (1951), the leading case in Illinois on the wrongful-interference tort, was so brought. See also *Jarmuth's Estate*, 329 Ill.App. 619, 70 N.E.2d 336 (1946); *Estate of Nelson*, 132 Ill.App.2d 544, 270 N.E.2d 65 (1971). *Nemeth v. Benhalmi*, 99 Ill.App.3d 493, 55 Ill. Dec. 14, 425 N.E.2d 1187 (1981), was not; but since in that case no will had been admitted to probate, an ancillary proceeding was not possible. In the present case, of course, it was.

True, the Illinois courts have not *said* that an action for tortious interference based on the alleged invalidity of a will may be brought only in the section 8–1 format. But they have had no occasion to say this, since the only reported case, *Lowe Foundation, supra*, was brought as one. We have to guess whether the Illinois courts would allow section 8–1 to be circumvented by calling a will contest an action in tort. The Illinois courts have rejected all other attempts that have been made to get around the exclusivity of section 8–1 by relabeling. See *Blyman, supra*, which was brought as an action for the partition of real estate; *Ruffing, supra*, brought as an action for relief from a probate judgment; and *Estate of Moerschel*, 86 Ill.App.3d 482, 41 Ill.Dec. 633, 407 N.E.2d 1131 (1980), brought as a declaratory-judgment proceeding. We think they would reject this one as well.

AFFIRMED.