Earl D. MUNROE, Plaintiff,

v.

Mary C. McGEE, Robert Holloway, the City of Salem, Massachusetts, Chief Robert M. St. Pierre, Officer Robert Lubas, Sergeant James M. Walker and Thos. B. Knight & Company Insurance Agency, Inc., Defendants.

Civil Action No. 06–10120–MLW.

United States District Court, D. Massachusetts.

March 15, 2007.

112

Stephen J. Duggan, Lynch & Lynch, South Easton, MA, Michael G. Tracy, Rudolph Friedmann LLP, Boston, MA, for Defendants.

**CONSOLIDATED REPORT AND RECOMMENDATION ON MOTIONS OF DEFENDANTS ROBERT L. HOLLOWAY, JR. AND MARY C. McGEE FOR JUDGMENT ON THE**

**PLEADINGS**[1] *(Docket # s 15, 16, 18, and 19)*

**and**

**MOTIONS OF DEFENDANTS ROBERT L. HOLLOWAY, JR. AND MARY C. McGEE TO DISMISS PURSUANT TO FED. R. CIV. P. 4(m)**[2] *(Docket # s 17 and 20)*

ALEXANDER, United States Magistrate Judge.

Plaintiff Earl D. Munroe ("Munroe"), an attorney representing himself *pro se,* filed the instant action on January 20, 2006. Defendant Mary C. McGee ("McGee") is the Special Administrator of the Estate of Evan T. Nysted. Defendant Robert L. Holloway ("Holloway") is McGee's attorney. Defendants, Chief Robert M. St. Pierre ("St. Pierre"), Officer Robert Lubas ("Lubas"), and Sergeant James M. Walker ("Walker") are members of the Salem, Massachusetts police department. Munroe also brings this action against the City of Salem, Massachusetts ("Salem") and the Thos. B. Knight & Company Insurance Agency, Inc. ("TBK").[3] In what the Court can only term as a made-for-T.V. drama, the instant action stems directly from the death of one Evan T. Nysted. While this Court's decision is made strictly on procedural and jurisdictional grounds, the underlying facts are important to a thorough understanding of how the Court comes to its conclusion.

**BACKGROUND**

Munroe, is a partner in the law firm of Munroe & Chew. In July 2003, Munroe allegedly entered into an agreement to share office space with TBK.[4] Munroe maintains that at the time the lease was executed, he was an officer and director of TBK, as well as a minority shareholder and a close personal friend of Evan T. Nystedt, the then-President and majority shareholder of TBK.

Mr. Nystedt died in May, 2004. In his will, Mr. Nystedt left all of his stock in TBK to Munroe. Accordingly, Munroe was named temporary executor of Mr. Nystedt's estate, and, as he maintains, duly elected as President of TBK to replace Mr. Nystedt.

In October, 2004, Mr. Nystedt's brother contested the will, partly on the ground that it allegedly was drafted by Munroe. *See In the Estate of Evan T. Nystedt,* Probate Court Docket No. 04P–1471–EP1. As a result of this will contest, the Massachusetts Probate and Family Court (Essex Division) (the "Probate Court") named Attorney Mary C. McGee as Special Admin-

---

1. Both Holloway and McGee submitted separate motions and supporting memoranda of law, each addressing claims particular to the submitting defendant. As will be seen, this Court reaches its decision without the need, or ability, to address claims against individual defendants. The two motions for judgment on the pleadings will, therefore, be addressed concomitantly.

2. Again, both Holloway and McGee submitted separate motions to dismiss. These motions, unlike the motions for judgment on the pleadings, are essentially identical and, as such, will be addressed concomitantly.

3. Throughout, all defendants will be referred to collectively as, simply, "Defendants."

4. Munroe maintains that he signed a sublease with TBK for a portion of TBK's office space which allowed him twenty-four hour access to that portion. The lease Munroe produces which allegedly memorializes this agreement includes his name and signature as both lessor and lessee. As will be seen, Munroe claims to hold a position with TBK that duly authorizes him to execute such leases on behalf of the company. Defendants McGee and Holloway, of course, take issue with Munroe's authority to bind TBK to a lease and, thus, the credibility of this lease itself.

istrator of the Estate, removing Munroe as temporary executor. *See Id.* The Probate Court then ordered Munroe to provide McGee with all documents related to TBK.

Further proceedings ensued, culminating in the Probate Court's issuance of a temporary restraining order on January 13, 2006, later extended to a preliminary injunction, restraining and enjoining Munroe from acting on behalf of TBK and authorizing McGee to take immediate control of TBK, including its operations and premises. *See McGee v. Munroe, et al.,* Probate Court Docket No. 06E–0005–GC1.

On March 17, 2006, the Probate Court found Munroe in civil contempt for disobeying the court's orders. *McGee v. Munroe,* Probate Court Docket No. 04P1471–AT1. Specifically, the court found that Munroe failed to timely account to McGee as Special Administrator with regard to his tenure as temporary executor of Mr. Nystedt's estate, and that his testimony about his preparation of that material was not credible. From the documents she did receive, McGee allegedly found that TBK was in serious financial trouble and avers that Munroe received several disbursements from TBK with no explanation and never paid rent to TBK or contributed to TBK's expenses.[5]

The parties disagree about the extent of Munroe's access to his law office during the period following January 13, 2006. McGee maintains that Munroe had access to the shared portion of the premises between 8:30 a.m. and 5:00 p.m. Munroe, however, claims that McGee changed the building's locks without notice, failing to provide Munroe with a new key, thereby excluding him from his law office and the premises of TBK.

On the morning of January 17, 2006, Munroe entered his law office and found a uniformed Salem Police Officer, Robert Lubas, stationed near the client reception area. McGee subsequently refused Munroe's request to seat Officer Lubas away from his clients. Later that day, two of Munroe's clients and another attorney joined Munroe in his office. Although McGee maintains that she allowed Munroe to stay past 5:00 p.m. and that Officer Lubas agreed to remain on the premises for the extra time, Munroe contends that McGee instructed Officer Lubas to demand Munroe leave the office immediately. Munroe attempted to explain to Officer Lubas that his lease entitled him to twenty-four hour access to the office and requested that Officer Lubas seek instructions from his supervisor.

After this confrontation, Munroe locked himself and his guests in his office and would not open the door until Officer Lubas' supervisor, Sergeant James M. Walker, pounded on the door and threatened to call the Salem Fire Department to come and remove the door. Munroe, allegedly fearing arrest and Sergeant Walker's aggressive behavior, left the premises at this time and cancelled his remaining appointments. To date, McGee continues to control access to Munroe's office and TBK.

## PROCEDURAL HISTORY IN THE DISTRICT COURT

On January 20, 2006, Munroe filed the instant action against the Defendants, alleging violation of 42 U.S.C. § 1983 by McGee, Lubas, Walker, St. Pierre, and Salem; violation of Massachusetts Civil Rights Act Mass. Gen. Laws c. 12 § 11I by

---

**5.** Munroe maintains that he continues his tenure as President of TBK. He contends that the by-laws of TBK have a super-majority provision, which make McGee's unilateral actions regarding TBK improper. Further, he alleges that the by-laws contain a binding arbitration provision.

McGee, Lubas, and Walker; tortious interference with an advantageous relationship and tortious interference with contract by McGee and Holloway; breach of fiduciary duty by McGee and Holloway; civil conspiracy by McGee and Holloway; breach of contract by TBK; legal malpractice by McGee and Holloway; violation of Mass. Gen. Laws c. 93A by McGee and Holloway; and further requesting enforcement of the arbitration provision in TBK's by-laws.

To date, Munroe has only served McGee, Holloway, and Salem.[6] Only McGee and Holloway filed Answers. Both McGee and Holloway have moved separately for judgment on the pleadings. Both McGee and Holloway also filed separate motions to dismiss the charges against Lubas, Walker, St. Pierre, Salem, and TBK pursuant to Fed.R.Civ.P. 4(m). No defendant has waived service.

This Court heard oral argument on the motions made by McGee and Holloway on September 15, 2006. During argument and on the record, Munroe, unsolicited and of his own volition, withdrew his claims against Lubas, Walker, and St. Pierre. In addition, Munroe withdrew his claim of legal malpractice against McGee and Holloway. This action's current posture is, therefore, the following:

1. As to McGee, Counts I, IV, V, VI, VII and X remain;

2. As to Holloway, Counts V, VI, VII and X remain;

3. As to Salem, Count III remains;

4. As to TBK, Count VIII remains;

5. Count XI, regarding enforcement of the arbitration provision, remains; and

6. Lubas, Walker, and St.Pierre are no longer defendants in this action.

**6.** Munroe did not serve Salem until after this Court granted leave to effectuate service after

## DISCUSSION

As can be readily perceived from the facts underlying this case, there are a number of legal issues presented to the Court. The issues range from federal and state civil rights violations to state torts and contract interpretation. Of paramount importance, however, in this case or in any other, is whether this Court is the appropriate forum to hear these issues.

In the instant matter, McGee and Holloway assert that this Court must abstain from reviewing this case entirely, primarily because of state actions currently ongoing in the Probate Court. For the reasons articulated below, this Court finds that abstention is appropriate in this situation, alternatively holding that this Court lacks subject matter jurisdiction over the dispute, and, thus, the Court need not and may not address the other points of contention.

### *Abstention*

It is clear that this action may not be heard by the Court, based on the current cases pending before the Probate Court. The waters are somewhat murky for the Court, however, in deciding which doctrine of abstention properly applies to the instant scenario. To further confuse the issue, both McGee and Holloway propose abstention or dismissal, yet each provides different and sometime overlapping theories for the Court. After careful analysis, this Court finds that abstention based on either the *Younger* or *Colorado River* doctrine applies. In addition, this case falls within the probate exception to federal jurisdiction and also invokes application of the *Rooker–Feldman* doctrine, both dictating that this Court lacks subject matter jurisdiction. The Court will now analyze

the time allowed under Fed.R.Civ.P. 4(m) lapsed.

each of these doctrines as they apply to the instant case.

### The Younger Doctrine

 Under *Younger* and its progeny, the Supreme Court broadened the abstention doctrine to protect principles of federalism and comity by preventing the federal courts from interfering substantially with certain ongoing state judicial proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *S. Boston Allied War Veterans Council v. Zobel,* 830 F.Supp. 643, 648 (D.Mass.1993) (Wolf, J.) [7]. As previously articulated by this District:

> *Younger* abstention is required when: (1) there are ongoing state judicial proceedings; (2) the state proceedings implicate important state interests; (3) the state proceedings afford an adequate opportunity to raise federal constitutional challenges; and (4) the plaintiff in the federal case has not demonstrated bad faith, harassment, or any other unusual circumstances that would call for equitable relief.

*Zobel,* 830 F.Supp. at 649.

It is undisputed that there are ongoing state judicial proceedings that relate to this case. There are, in fact, three ongoing judicial proceedings before the Probate Court.[8] The merits of these cases have not been resolved by the Probate Court, let alone been litigated to a conclusion through the state appellate process.

Further, the ongoing state litigations implicate several significant state interests. As articulated by this Court in *Zo-bel*, "the Supreme Court has recognized that the states have an important interest in protecting the authority of the state judicial system, so that its orders and judgments are not rendered nugatory." 830 F.Supp. at 649 (internal quotations and notations omitted) (citing to *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and *Casa Marie, Inc. v. Superior Court of Puerto Rico,* 988 F.2d 252 (1st Cir.1993)).

Here, the Probate Court has already made factual and legal determinations of significant importance to this case. Of primary importance is the Probate Court's order granting McGee authority to control TBK and its assets. This grant of authority is undisputed. The scope of that authority, however, is vigorously disputed by Munroe. It would, therefore, be completely inappropriate for this Court, not having made the underlying grant of authority, not having been involved in this dispute from the very beginning, and indeed not having the experience and expertise in such matters, to interpret the Probate Court's order when the Probate Court still retains jurisdiction over the matter in multiple, ongoing actions. *See, e.g., In re Whatley,* 396 F.Supp.2d 50, 55–57 (D.Mass. 2005) (expounding the merits of federal courts avoiding "unnecessary interference with the more experienced state [probate and family court] system.").[9] It is precisely this almost interlocutory interference with ongoing state proceedings that the Supreme Court proscribes. *See, e.g.,*

---

7. Note that subsequent to his decision in *Zobel*, The Honorable Mark L. Wolf has been elevated to the position of Chief Judge for the District of Massachusetts. For simplicity, and to maintain consistency with Chief Judge Wolf's status when he decided *Zobel*, he will be referred to, with no disrespect, as simply Judge Wolf throughout.

8. Those proceedings are entitled and docketed as: In the Estate of Evan T. *Nystedt,* Probate Court Docket No. 04P–1471–EP1; *McGee v. Munroe,* Probate Court Docket No. 04P–1471–At1; and *McGee v. Munroe, et al.,* Probate Court Docket No. 06E0005–GC1.

9. The probate exception articulated in *In re Whatley* is addressed in more detail *infra.*

*Pennzoil,* 481 U.S. at 13–14, 107 S.Ct. 1519.

The federal claims at issue here can be adequately litigated in the current state court proceedings. Munroe asserts only one true federal claim, under 42 U.S.C. § 1983, as against McGee, Lubas, Walker, St. Pierre, and Salem. As previously explained, Munroe has withdrawn his claims against Lubas, Walker, and St. Pierre. While the Court is puzzled at Munroe's desire to withdraw his claims against the very state officials against whom he claims violated of his civil rights, yet wish to retain those claims against their city of employment, his strategic decision is of no moment. What remains are Counts I and III against McGee and Salem, respectively, for violations of 42 U.S.C. § 1983.

The very underpinning of Munroe's 42 U.S.C. § 1983 claims is formed by his theory that McGee abused the power vested in her by the Probate Court in causing police officers of the City of Salem to act against Munroe. Any determination of the merits of Munroe's claims, therefore, must flow in the first instance from a determination of the extent of McGee's court prescribed powers and an interpretation of whether McGee abused the intended scope of those powers. Again, should the federal claims be litigated in the state court proceedings, the Probate Court is perfectly capable and would be in the best position to make such necessary findings in accordance with its own contemplated rulings. *See Bettencourt v. Bd. of Registration in Med. of Com. of Mass.,* 904 F.2d 772, 776 (1st Cir.1990) ("underlying our federal system is a presumption that the state courts are as capable as their federal counterparts of guaranteeing federal rights"); Mass. Gen. Laws c. 215 §§ 2 and 3.

Finally, there has been no argument or showing of harassment or any other reason why equitable relief from this Court is otherwise appropriate.

Accordingly, the criteria outlined in *Younger* which call for abstention have been satisfied. Regardless, the Court will now turn to the next doctrine of abstention for further support.

#### Colorado River Doctrine

Under *Colorado River* and its progeny, the Supreme Court identified six nonexclusive factors to be considered in deciding whether to defer to a parallel state court proceeding. 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483. The First Circuit has articulated those factors thus:

(1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties.

*Rivera–Puig v. Garcia–Rosario,* 983 F.2d 311, 320–21 (1st Cir.1992); *see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Five of the Supreme Court's six factors are satisfied in the instant action, thus instructing abstention. First, it is undisputed that the Probate Court has assumed jurisdiction over a *res.* Namely, the Probate Court has assumed, and it is uncontested that its doing so is improper, the Estate of Evan T. Nystedt, including administration of the majority of shares of TBK stock. The second factor, the inconvenience of the federal forum, is a non-issue, all proceedings being within Massachusetts.[10] Third, this is the quintessential

10. The Court mentions, out of sheer intellec- tual curiosity, that while the forum is not

scenario resulting in piecemeal litigation. There are three pending state court actions and one pending in the federal courts. Any of these actions may spawn results on discreet or broad issues that would have a significant effect on the other pending litigations should that outcome be applied or withheld. Fourth, the underlying Probate Court proceedings were filed before the federal action.[11] Fifth, it is uncontested that Massachusetts law governs all claims, with the exception of the above-discussed 42 U.S.C. § 1983 claims. Sixth, and finally, there is no credible evidence that the Probate Court will not adequately protect the interests of the parties, necessitating interference by this Court.

Under the *Colorado River* doctrine, therefore, this Court must also abstain from hearing this action.

### Probate Exception to Federal Jurisdiction

 Simply, "a federal court may not probate a will, administer an estate, or entertain an action that would interfere with pending probate proceedings in a state court or with a state court's control of property in its custody." *In re Whatley*, 396 F.Supp.2d at 55 (citations omitted); *see Marshall v. Marshall*, 547 U.S. 293, 126 S.Ct. 1735, 1748, 164 L.Ed.2d 480 (2006) (same). While the probate exception is clearly evolving, "courts tend to view the probate exception as extending to all suits ancillary to the probate of a will." *In re Whatley*, 396 F.Supp.2d at 55 (internal punctuation and citations omitted). A court considering whether a particular suit

is ancillary to a probate proceeding must take a practical approach and consider the policy goals underlying the probate exception, analyzing whether allowing the particular lawsuit to be maintained in federal court would impair the policies served by the exception. *Id.* (internal punctuation omitted) (citing *Dragan v. Miller*, 679 F.2d 712 (7th Cir.1982) and quoting *Storm v. Storm*, 328 F.3d 941, 944 (7th Cir.2003)). Those practical polices for the Court's consideration are (1) encouragement of legal certainty; (2) promotion of judicial economy; (3) using "relative expertness" of the courts; and (4) avoiding unnecessary interference with the state system of probate law. *See In re Whatley*, 396 F.Supp.2d at 56 (citing to and deriving these considerations from *Storm*, 328 F.3d at 944).

It is undisputed that this case does not involve a pure probate matter, i.e. the administration by this Court of an estate or the probate of a will. However, this Court finds that this action is rightly described as one that is "ancillary" to a probate proceeding, thus depriving this Court of jurisdiction. Initially, the Court is asked to interpret an order of a state probate court to determine the scope of McGee's authority over the subject estate. Munroe, therefore, indirectly asks this Court to consider holding McGee liable for abusing her state court granted authority, thus defining that authority for the state court and, to the extent this Court finds McGee abused her authority, overturning the state court's grant of power without

---

geographically inconvenient, the onus of bringing this Court completely up-to-speed with the Probate Court's proceedings, including filings, arguments, and decisions, would be inconvenient for all parties involved in terms of time, expense, and duplication. As this interpretation of the "inconvenience of the forum" factor is different from the factor's plain meaning and more akin to general no-

tions of promoting judicial economy and efficiency, the Court simply posits whether an alternative or additional interpretation such as this may be appropriate in some circumstances.

11. The Probate Court proceedings have been pending since at least June 8, 2004, while the instant action was filed on January 20, 2006.

permitting the state court to interpret the intended scope of its own order.

Munroe's hoped for result primarily flies in the face of the "relative expertness" prong articulated in *Storm* and relied upon in *Whatley*. It is beyond peradventure that the state probate court possesses greater expertise in matters involving interpretation and scope of powers vested in a special administrator for a decedent's estate. *See, e.g., Whatley,* 396 F.Supp.2d at 57 (articulating the comparative expertise found in state probate and family courts relative to federal courts). Further, it is compellingly logical that the same court that vested the special administrator with her powers is best situated to interpret and explain its own order and review the special administrator's actions to determine whether they fall outside the intended scope of the court's order. In light of the above-mentioned considerations, Munroe's challenge in the federal court is ancillary to the ongoing probate proceedings in the state court, thus depriving this Court of subject matter jurisdiction.

### Rooker–Feldman Doctrine

■■■■ While neither defendant relies upon the *Rooker–Feldman* doctrine, if there is any question, this Court must consider, *sue sponte,* whether it possesses subject matter jurisdiction, which may invite application of *Rooker–Feldman. See, e.g., Mills v. Harmon Law Offices, P.C.,* 344 F.3d 42, 44 (1st Cir.2003) (approving of the Magistrate Judge's *sue sponte* application of the *Rooker–Feldman* doctrine). Despite Munroe's efforts to create claims under 42 U.S.C. § 1983 against McGee, police officers, and Salem, it is clear to the Court that his efforts are no more than an attempt at an end-around of the decisions rendered by the Probate Court. In effect, then, Munroe is asking this Court to sit in an appellate capacity over the decisions of

a state court. This Court is, of course, not vested with that jurisdiction.

■■■■ On the federal level, only the Supreme Court of the United States is empowered to hear direct appeals of state court decisions. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); 28 U.S.C. § 1257. "[L]ower federal courts do not have jurisdiction over appeals from state court decisions, even if those decisions involve questions arising out of the United States Constitution." *Zobel,* 830 F.Supp. at 647–48; *Feldman,* 460 U.S. at 486, 103 S.Ct. 1303. "Federal review of state court decisions is available only through a petition for certiorari to the Supreme Court pursuant to 28 U.S.C. § 1257." *Zobel,* 830 F.Supp. at 648.

■■■■ This Court's jurisdiction does not depend upon whether the case is formally styled as an appeal. As aptly explained by Judge Wolf in *Zobel,* "even when … plaintiff brings its case as a new § 1983 claim to challenge an action taken by the state court, the district court is without jurisdiction if the federal claim is 'inextricably intertwined' with the state court's decision." *Id.* (quoting *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. 1303).

In *Zobel,* the state litigation was brought by the Irish–American Gay, Lesbian, and Bisexual Group ("GLIB"). Initially, GLIB sought and obtained an order requiring its inclusion in the 1992 St. Patrick's Day–Evacuation Day parade. Later, GLIB sought and obtained a similar order for the 1993 parade. The organizers of the parade, simply referred to here as the Veteran's Council, took action to stop the state court's order of inclusion by commencing an action in this Court seeking relief pursuant to 42 U.S.C. § 1983 for alleged viola-

tions of their rights under the First Amendment and specifically asking this Court to enjoin the operation of the pending state court order of inclusion.

Judge Wolf held that this Court lacked jurisdiction under *Rooker–Feldman* because the Veteran's Council asked for relief on issues that were " 'inextricably intertwined' with fact-specific decisions of the courts of the Commonwealth of Massachusetts." 830 F.Supp. at 648 (citations omitted). Further, the Veteran's Council had "not yet . . . exhausted its avenues of appeal in the state court system." *Id.* Judge Wolf, rightly, would not permit a regretful party, disappointed with its outcome in state court, to "seek a happier result in a federal forum." *Id.* at 651 (citations omitted).

Just like *Zobel,* here, we have an order of the state court appointing McGee Special Administrator and providing her with powers to control the assets and manage the Estate of Evan T. Nystedt. We also have a plaintiff who is displeased with that order and the subsequent actions taken by McGee pursuant to that order. Munroe, like the Veteran's Council, thus brings his 42 U.S.C. § 1983 action in this Court seeking review and ultimately reversal of the Probate Court's provision of power to McGee in her capacity as Special Administrator.

As previously articulated, Munroe's 42 U.S.C. § 1983 claim is "inextricably intertwined" with the Probate Court's decision to appoint McGee Special Administrator and the powers and responsibilities that flow from that appointment. Munroe's claim cannot be properly evaluated until the scope of McGee's appointment is settled and an evaluation of whether McGee abused her power and exceeded that scope. Such a challenge to the scope of a special administrators power remains properly before a state court.

## CONCLUSION

Based on the aforesaid, this Court recommends abstention from the instant action. Accordingly, this Court hereby recommends dismissal.