Robert W. ASHTON, Leonard Steel, and Chemical Bank, as Executors of the Estate of Raymonde I. Paul, Deceased, Plaintiffs–Appellees,

v.

The JOSEPHINE BAY PAUL AND C. MICHAEL PAUL FOUNDATION, INC.; Howard N. Miller, as Second Successor Personal Representative of the Estate of C. Michael Paul, Deceased; Commissioner of the Internal Revenue Service; State Tax Commission of the State of New York; Wilderstein & Co., Inc.; America–Israel Cultural Foundation, Inc.; and The Metropolitan Museum of Art, Defendants,

Commissioner of the Internal Revenue Service, Defendant–Appellee,

The Josephine Bay Paul and C. Michael Paul Foundation, Inc.; Howard N. Miller, as Second Successor Personal Representative of the Estate of C. Michael Paul, Deceased, Defendants–Appellants.

In the Matter of the Application of Robert W. ASHTON, Leonard Steel, and Chemical Bank, as Executors of the Estate of Raymonde I. Paul, Deceased, for the Judicial Determination of the Validity and Enforceability of Claims to the Assets of the Interpleaded Assets of the Estate of Raymonde I. Paul, Deceased, of Claimants The Josephine Bay Paul and C. Michael Paul Foundation, Inc.; Howard N. Miller, as Second Successor Personal Representative of the Estate of C. Michael Paul, De-

ceased; Commissioner of the Internal Revenue Service; State Tax Commission of the State of New York; Wilderstein & Co., Inc.; America–Israel Cultural Foundation, Inc.; and The Metropolitan Museum of Art.

In the Matter of the Application of Robert W. ASHTON, Leonard Steel and Chemical Bank, as Executors of the Estate of Raymonde I. Paul, Deceased, to Discover Property Withheld.

In the Matter of the Application of Robert W. ASHTON, Leonard Steel and Chemical Bank, as Executors of the Estate of Raymonde I. Paul, Deceased, For Advice and Direction as to the Sale of Property.

No. 414, Docket 90–6199.

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1990.

Decided Nov. 16, 1990.

Elliot Silverman, New York City (William F. Dowling, Gold & Wachtel, New York City, of counsel), for defendant-appellant Howard N. Miller, as Second Successor Personal Representative of the Estate of C. Michael Paul, Deceased.

Josephine Lea Iselin, New York City (Daniel L. Kurtz, Mark A. Sirota, Felicia A. Rosenfeld, Lankenau & Bickford, New York City, of counsel), for defendants-appellants The Josephine Bay Paul and C. Michael Paul Foundation, Inc.

Lisa A. Jonas, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee.

Carlton R. Asher, Jr., New York City (Jeffery H. Sheetz, Gaston & Snow, New York City, of counsel), for plaintiffs-appellees.

Before WINTER and MINER, Circuit Judges, and LASKER, District Judge.*

WINTER, Circuit Judge:

Appellants, two of seven defendants in this federal interpleader action, appeal from Judge Sprizzo's order enjoining them from proceeding with an estate accounting in a Florida probate court. We conclude that the statutory standards for interpleader jurisdiction under 28 U.S.C. § 1335 have been met and that the so-called "probate exception" to federal jurisdiction does not require abstention. We therefore affirm the injunction as within the discretion of the district court.

## BACKGROUND

In 1980, C. Michael Paul ("C.M. Paul"), a resident of Palm Beach County, Florida, died, leaving an estate valued at more than $50 million. His sister, Raymonde I. Paul ("R.I. Paul") petitioned to have her brother's will admitted to probate in Florida and served thereafter as sole Personal Representative of the estate until her own death in 1985.

Under her brother's will, R.I. Paul received specific bequests of property, a legacy of $400,000, and rights to income for life from various other assets. The residuary legatee was an eleemosynary entity known as the Josephine Bay Paul and C. Michael Paul Foundation, Inc. ("the Foundation"). R.I. Paul never formally accounted for her administration of her brother's estate. Nor did the Foundation—whose executive director was at one time Robert W. Ashton ("Ashton"), personal attorney to R.I. Paul—seek such an accounting. After R.I. Paul's death, however, the Foundation retained new counsel to pursue its rights and requested an accounting.

Plaintiffs-appellees Leonard Steel ("Steel") and Chemical Bank were appointed successor fiduciaries of the C.M. Paul Estate by the probate court of Palm Beach County, Florida. In March 1987, they filed the first accounting for R.I. Paul's adminis-

tration of her brother's estate. In April 1989, Chemical Bank, which also served as a fiduciary for the R.I. Paul Estate, which is being probated in New York, was removed by the Florida probate court from its position as fiduciary for the C.M. Paul Estate because of a conflict of interest in the two roles. Steel, who wore the same two hats, resigned as a fiduciary for the C.M. Paul Estate at the hearing on the motion to remove him. Appellant Howard Miller was appointed to replace them.

In June 1989, Chemical Bank and Steel filed an accounting for their administration of the C.M. Paul Estate. Both the 1987 and 1989 accountings are currently the subject of various objections and surcharge claims in the probate court in Florida. In addition, the Foundation and Miller have petitioned the Florida probate court for an order compelling the return of various C.M. Paul Estate assets that R.I. Paul allegedly commingled with her personal property and bequests. In August 1989, Steel and Chemical Bank removed the accounting proceeding from the probate court to the United States District Court for the Southern District of Florida. The district court remanded the case to the probate court on the ground that "the probate exception precludes federal jurisdiction in this case."

Shortly thereafter, the executors of the R.I. Paul Estate—Ashton, Steel and Chemical Bank ("the R.I. Paul executors")—commenced this interpleader action in the New York Surrogate's Court, naming *inter alia* the Internal Revenue Service ("IRS") as a defendant. The IRS, which claims a lien upon the gross R.I. Paul Estate under 26 U.S.C. § 6324, removed the action to the United States District Court for the Southern District of New York, whereupon the R.I. Paul executors amended their complaint to assert federal statutory interpleader jurisdiction under 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure.

The interpleaded assets consist primarily of cash and cash equivalents located in

---

* The Honorable Morris E. Lasker, District Judge, United States District Court for the Southern District of New York, sitting by designation.

New York, as well as il and gas properties located for the most part in Texas and New Mexico. Initially, the property was secured by a $9 million bond, an amount since increased to $10 million.

On the same day that the R.I. Paul executors filed their amended complaint, they moved to enjoin the accounting proceeding in probate court in Florida. The Foundation and Miller simultaneously moved to dismiss for want of jurisdiction. The district court denied the motion to dismiss and enjoined all defendants, including the Foundation and Miller, from "instituting or prosecuting any proceeding or asserting any claim in any state or federal court against the assets of the [R.I. Paul Estate] ..." (Amended Order, July 18, 1990). The Foundation and Miller appeal from the injunction.

## DISCUSSION

Appellants challenge both the statutory and prudential bases for the district court's exercise of federal interpleader jurisdiction. They argue that the statutory standards for such jurisdiction have not been met and that, even if statutory authority exists, the district court should have stayed its hand because of the probate exception to federal jurisdiction. We disagree.

**1.** 28 U.S.C. § 1335 (1988) states in pertinent part:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation ... having in his or its custody or possession money or property of the value of $500 or more ... if
> (1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property ...; and if
> (2) the plaintiff has deposited such money or property ... into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
> (b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or

### 1. *Jurisdiction*

Under 28 U.S.C. § 1335,[1] a district court has jurisdiction over a civil action involving adverse claims to money or property worth $500 or more so long as at least two of the adverse claimants are of diverse citizenship and "are claiming or may claim to be entitled to such money or property."[2] In aid of such jurisdiction, the district court has authority under 28 U.S.C. § 2361[3] to enjoin other state or federal proceedings affecting the interpleaded property. The statutory scheme provides stakeholders a method by which they can deposit a stake subject to adverse claims with the court so that ownership can be adjudicated and the stakeholder can avoid being subjected to inconsistent judgments in different fora.

Judge Sprizzo concluded that the instant action is a paradigmatic interpleader action. In colloquy with counsel, he stated:

> The Court: ... No one is disputing that there is a fund in Florida over which the Florida court properly has jurisdiction. That is not the fund we are arguing about here. We are arguing about assets which they claim to be part of the New York estate which you say are properly part of the Florida estate because they stole the assets from the Florida estate. But until you prove they did,

are not identical, but are adverse to and independent of one another.

**2.** Some of the defendants to this interpleader action have not asserted formal claims against the R.I. Paul Estate and are parties only because they "may claim to be entitled" to the interpleaded assets at some future date.

**3.** 28 U.S.C. § 2361 (1988) states in pertinent part:

> In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court....
> Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

there is no constructive trust on those assets in Florida yet.

Ms. Iselin: By approaching it in that manner, your Honor, I would respectfully submit that the requirement for an account in a state would become meaningless. They held the assets or their predecessor as a fiduciary, and she never accounted.

The Court: They say you never even forced her to account as you should have done. They say you waived your rights in Florida.

\* \* \* \* \* \*

The Court: ... Had you made them account in Florida and had the Florida court already found those assets properly in the estate and impressed a constructive trust upon them, you would have a better argument. Even then they would have an argument that the IRS is claiming title to the same funds a[nd] the IRS has the right to relitigate the correctness of what the Florida court does, which is the perfect basis for interpleader.

\* \* \* \* \* \*

The Court: The IRS has a claim against this estate and has the right to relitigate the question of whether the Florida court is correct in saying these assets belong to the Florida estate. Which means [plaintiffs-appellees, as executors of the New York estate] could pay twice. That is the perfect basis for an interpleader action.

On appeal, appellants do not dispute the sufficiency of the jurisdictional amount, the adequacy of the $10 million bond, or the requisite diverse citizenship. Rather, they argue that interpleader is improper because the R.I. Paul Estate continues to claim an interest in the fund. In addition, they object to interpleader on the grounds that the R.I. Paul Estate faces claims arising out of distinct and unrelated legal obligations and that its potential liabilities for breach of fiduciary duty and mismanagement of the C.M. Paul Estate far exceed the amount of the bond held by the court.[4]

Appellants' view of interpleader jurisdiction misapprehends the nature of modern interpleader. The Supreme Court has observed that "the present [interpleader] statute ... is remedial and to be liberally construed." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967). Neither the language of Section 1335 nor the resultant case law limits interpleader jurisdiction to cases in which the plaintiff has conceded liability to one or all of the defendants. To the contrary, since 1936 interpleader jurisdiction has extended to " 'bill[s] in the nature of interpleader,' meaning those in which the plaintiff is *not* wholly disinterested." *Id.* at 532 n. 9, 87 S.Ct. at 1204 n. 9 (emphasis added).

Nor are appellants correct in asserting that interpleader must involve claims arising out of a common source of right or entitlement. Section 1335's plain terms provide for interpleader jurisdiction even where "the titles or claims of the conflicting claimants do not have a common origin."

Finally, we reject the argument that interpleader jurisdiction is improper where claims against the stakeholder potentially exceed the value of the interpleaded fund. *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91 (2d Cir.1983), involved an interpleader action in which the interpleaded asset was the cash surrender value of two life insurance policies. The insured had initiated state court actions against the insurer claiming the cash surrender value and also consequential damages arising from the tortious withholding of that amount. The insurer then brought a federal interpleader action and deposited the cash surrender value. An appeal raised the issue of whether the interpleader court had the power to enjoin prosecution of the state court action for consequential damages, which of course involved claims above and beyond the interpleaded amount. We stated:

---

**4.** The R.I. Paul Estate, through its executors, contests liability not only with regard to C.M. Paul Estate beneficiaries but also with regard to the IRS and New York State Tax Commission.

[w]e are of the view that it would have been within the district court's power and discretion to adjudicate [the interpleader defendant's] claims for consequential damages arising out of [a stakeholder's] allegedly tortious withholding of the cash surrender value of the insurance policies, *see* 28 U.S.C. § 2361; *Francis I. duPont & Co. v. Sheen,* 324 F.2d 3 (3d Cir.1963), and thereafter to enjoin permanently [the defendant's] prosecution of such claims, *see Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75, 82–83 (10th Cir.1955), *cert. denied,* 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853 ... (1956).

*Id.* at 96 (parallel citations omitted). The case for the exercise of interpleader jurisdiction in the instant matter is considerably stronger than in *New York Life.* Appellants' claims against the R.I. Paul Estate are not against Ashton, Steel, or Chemical Bank personally. All of the relevant assets have thus been interpleaded, and the argument that the estate's liabilities may exceed the interpleaded fund is of no moment.

■ Appellants' arguments confuse the present case with cases in which there is no genuine adversity among claimants, *see, e.g., Indianapolis Colts v. Mayor & City Council,* 733 F.2d 484, 487 (7th Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *Kelly v. Raese,* 377 F.2d 263, 266 (4th Cir.), *cert. denied,* 389 U.S. 931, 88 S.Ct. 294, 19 L.Ed.2d 283 (1967), or where the adversity results solely from the limited size of the fund. The function of interpleader is to resolve claims for designated assets based on mutually exclusive theories rather than to adjudicate rival claims that are mutually exclusive only because of the limited size of the assets.

■ The various defendants in the instant action have clearly asserted claims to the assets of the R.I. Paul Estate based on mutually exclusive theories. The Foundation and Miller assert claims based on their

view that the R.I. Paul Estate's assets are part of the C.M. Paul Estate. If so, the IRS's claims fail because the IRS concedes that its liens for taxes due on the R.I. Paul Estate cannot attach to funds belonging to the C.M. Paul Estate. Similarly, if the Foundation prevails, then the beneficiaries of the R.I. Paul Estate, on whose behalf plaintiffs-appellees brought this action, stand to receive little or no inheritance.

■ One further point requires discussion. Appellants argue that, even if the technical requirements of Section 1335 have been satisfied, the R.I. Paul executors have misused federal interpleader procedures in order to convert this dispute from one in which estate fiduciaries must account to a probate court, into one in which mutually adverse estate beneficiaries must prove their respective claims to an interpleaded fund. There is some force to this point, because, by converting this action into an interpleader proceeding, the R.I. Paul executors may have shifted the burden of proof—and the risk of loss due to insufficient evidence—to appellants.

While acknowledging (without deciding the issue) the possibility of a marginal improvement in the litigating position of the R.I. Paul executors, we do not believe it is of sufficient weight for us to deny access to the interpleader mechanism. Had the R.I. Paul executors not resorted to the interpleader, they might well have faced inconsistent judgments in different fora, particularly because one of the parties asserting a claim against them, the IRS, takes the position that it is neither amenable to the Florida court's jurisdiction nor bound by its judgment. *See Commissioner v. Estate of Bosch,* 387 U.S. 456, 457–58, 87 S.Ct. 1776, 1778–79, 18 L.Ed.2d 886 (1967). Avoidance of such a conflict in judgments is precisely the purpose of Section 1335, and the fact that the R.I. Paul executors may have secured the incidental benefit of shifting the burden of proof does not persuade us that the exercise of federal interpleader jurisdiction is improper.[5]

5. Appellants also object to interpleader jurisdiction on the ground that plaintiffs-appellees have interpleaded two discrete funds. In appellants'

view, the interests of the C.M. Paul Estate beneficiaries bear no relation to, and thus are not adverse to, the IRS's interests because the inter-

### 2. The "probate exception"

Because the district court enjoined the parties from prosecuting parallel or competing proceedings against the interpleaded assets, appellants assert that the district court effectively stayed a pending probate proceeding in contravention of principles of comity and, specifically, the so-called "probate exception" to federal jurisdiction. Again, we disagree.

The probate exception is "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir.) (Posner, J.), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). Its core proposition, if any, seems to be that "a federal court has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). The oft-cited explanation for the exception's origin is that federal equity jurisdiction, which was conferred by the Judiciary Act of 1789, 1 Stat. 73, is coterminous with the jurisdiction of the English courts of chancery of that period. Just as chancery lacked jurisdiction to probate wills or administer intestate estates, goes the argument, so do modern federal courts lack such jurisdiction. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3610 (1984); P. Bator, D. Meltzer, P. Mishkin & D. Shapiro, Hart & Wechsler's *The Federal Courts and the Federal System* (3d ed. 1988) [hereinafter Hart & Wechsler] at 1456. However, chancery's jurisdictional limitation rested on the fact that "[t]he probate of wills and the grant of letters of administration were the distinctive functions of the ecclesiastical courts in England." Hart & Wechsler at 1456; *see also Dragan*, 679 F.2d at 713. Ecclesiastical courts are not part of the American legal tradition, and the drafters of the Judiciary Act may well have viewed chancery's deference to such courts as nothing but a quirk of English legal history and an anachronistic vestige of the Reformation. *See Dragan*, 679 F.2d

at 713; Hart & Wechsler at 1459. Thus, the rationale for the probate exception, at least when conceived of as more than a prudential doctrine of federal and state comity, is dubious.

Moreover, even if exclusivity of English ecclesiastical jurisdiction defines the scope of the contemporary American probate exception, we would be hard-pressed to ascertain the precise range of matters over which English ecclesiastical courts in fact exercised exclusive jurisdiction. One circuit has suggested that ecclesiastical jurisdiction may have been exclusive only with respect to personal property and that chancery may have had broad powers over the inheritance of land. *See Dragan*, 679 F.2d at 713 (citing *Barnesly v. Powel*, 1 Ves. Sen. 284, 286–87, 27 Eng.Rep. 1034, 1036 (Ch. 1749)); *cf.* Hart & Wechsler at 1456. If so, the modern probate exception would seem an especially narrow one.

Whatever the origins and purposes of the exception, however, we agree with the Seventh Circuit that "it is too well established a feature of our federal system to be lightly discarded, and by an inferior court at that." *Dragan*, 679 F.2d at 713. It is thus well settled that a federal court may not probate a will, administer an estate, or entertain an action that would interfere with pending probate proceedings in a state court or with a state court's control of property in its custody. *See, e.g., Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Lamberg v. Callahan*, 455 F.2d 1213, 1216 (2d Cir.1972); *Celentano v. Furer*, 602 F.Supp. 777 (S.D.N.Y.1985). Moreover, the Supreme Court "has regularly rebuked the few efforts of lower federal courts to take over, generally, the administration of a decedent's estate," Hart & Wechsler at 1456 (citing cases), including the exercise of otherwise proper jurisdiction over the accounting of an estate, *see Waterman v. Canal–Louisiana Bank & Trust Co.*, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909).

---

pleaded "fund" actually consists of (i) assets held by the R.I. Paul Estate in its fiduciary capacity for the C.M. Paul Estate, and (ii) assets owned beneficially by the R.I. Paul Estate.

However, this argument begs the question posed by the instant action—namely, who is entitled to the assets under the control of R.I. Paul executors?

■ It is equally well settled, however, that the probate exception does not prevent a federal court from adjudicating rights to property in an estate.

> where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Markham,* 326 U.S. at 494, 66 S.Ct. at 298. Merely determining the rights to, as opposed to administering, assets is not proscribed by the probate exception. Jurisdiction thus is proper "so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* (relying on *Waterman,* 215 U.S. at 43, 30 S.Ct. at 12).

■ The instant appeal does involve a slight wrinkle. In the typical case, the probate exception disables federal courts from exercising diversity jurisdiction under 28 U.S.C. § 1332. *See, e.g., Lamberg,* 455 F.2d at 1216. Here, the district court exercised jurisdiction under Section 1335, the federal interpleader statute. The question posed is thus whether the district court's injunction based on interpleader jurisdiction, as opposed to its forthcoming adjudication of rights, interferes with the Florida probate proceeding.[6] We hold that it does not, for two reasons.

First, although appellants vigorously assert that the assets in question are property in the C.M. Paul Estate, that is the very question to be decided in this interpleader action. The adjudication of that question, standing alone, does not constitute interference with the Florida probate proceeding. *See Markham,* 326 U.S. at 495, 66 S.Ct. at 298–99. While the Florida probate court will be obliged to give full faith and credit to the district court's adjudication, it will continue to administer the C.M. Paul Estate, including any accounting, free from federal interference. Indeed, we fail to see how the Florida probate court's administration of the C.M. Paul Estate will be facilitated by an ongoing legal tug of war over the assets in question involving a number of different courts and litigants. The IRS claims a lien in excess of the amount of the stake and is not a party to the Florida proceedings. An extended delay in the administration of the C.M. Paul Estate seems inevitable absent a single judgment binding all interested parties and resolving their respective rights to the interpleaded fund. That judgment would thus seem to be a beneficial rather than intrusive exercise of federal jurisdiction.

Second, the case for exercising federal jurisdiction notwithstanding the probate exception is stronger in interpleader actions than in ordinary diversity cases. Even if we believed that the injunction interferes in some generalized way with a probate accounting proceeding in Florida, Section 2361 expressly authorizes injunctions in aid of federal interpleader and is the result of a deliberate congressional balancing of state and federal interests. *See supra* note 3. In the face of such clear legislative direction on an issue of federal/state comity, there is little room for courts to infer that the murky probate exception prevents the injunction in the instant matter even at the cost of frustrating the statutory purpose.

Affirmed.

---

6. We have found no reported decision in which the probate exception has foreclosed a federal court from exercising interpleader jurisdiction. Although in *Travelers Ins. Co. v. First Nat'l Bank,* 675 F.2d 633 (5th Cir.1982), appellants raised the issue, the court of appeals was "spared the task of deciding this difficult issue" because the cross-claims against the co-executors of decedent's estate were dismissed on other jurisdictional grounds. *Id.* at 636, n. 6.